IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PATRICE W. APPLEBY,

   Plaintiff,

     v.

TROOPER WILLIAM WEST
DPS AGENT,

   Defendant.

CIVIL ACTION FILE
NO. 1:13-CV-1334-TWT

**OPINION AND ORDER**

This is a pro se civil rights action claiming that the Defendant State Trooper falsely arrested and used excessive force against the Plaintiff. The Plaintiff was arrested after she was pulled over for speeding and refused to sign the citation with anything but a red pen, and then got into an argument with the Defendant. The Court concludes that the Defendant is protected by qualified immunity.

**I. Background**

At around noon on July 6, 2012, the Plaintiff Patrice Appleby was driving on Highway 19 in Mitchell County, Georgia.[1] The Plaintiff was pulled over by the

---

[1] Am. Compl. ¶ 10.

Defendant, Trooper William West, for speeding.[2] The Defendant issued the Plaintiff a citation, and the Plaintiff informed the Defendant that she needed to sign it with a red pen.[3] The Plaintiff wished to use a red pen because, after being a victim of identity theft in 2007, she "made a decision to sign all official, original documents with a red signature as part of a larger plan to protect her signature and identity from future abuses."[4] When informed that she could not use a red pen, the Plaintiff told the Defendant that "she would need to call her husband to ask what to do if she could not sign her signature in red ink."[5] The Defendant instructed the Plaintiff not to use her cell phone during the traffic stop but the Plaintiff continued to attempt to make a call.[6] After being asked again to put her cell phone down, the Plaintiff told the Defendant she did not have a gun.[7] When the Plaintiff again refused to put her cell phone down, the Defendant informed her she was under arrest and asked her to step out of the vehicle.[8] The Plaintiff refused to exit her vehicle and reached for her purse. At this

---

[2]  Am. Compl. ¶ 11.

[3]  Am. Compl. ¶¶ 14-15.

[4]  Am. Compl. ¶ 26.

[5]  Am. Compl. ¶ 17.

[6]  Def.'s Mot. for Summ. J., Ex. A ¶¶ 28-30.

[7]  Id.

[8]  Id. ¶¶ 32-33.

point, the Defendant pulled the Plaintiff from her car, put her face down on the road, and handcuffed her.[9] The Plaintiff allegedly suffered injuries during this process.[10]

Both the Plaintiff and the Defendant move for summary judgment. The Plaintiff contends she is entitled to summary judgment on her claims for false arrest and the use of excessive force. The Defendant contends he is entitled to summary judgment because he is protected by qualified immunity, and because he nevertheless had probable cause to make the arrest and used de minimis force.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[11] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[12] The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.[13] The burden then shifts to the

---

[9] Id. ¶¶ 31, 38-40.

[10] Am. Compl. ¶ 21.

[11] FED. R. CIV. P. 56(c).

[12] Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

[13] Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[14] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[15]

### III. Discussion

The parties essentially seek summary judgment in their favor with respect to both of the Plaintiff's claims. Because the Court concludes that the Defendant is entitled to qualified immunity, it need not address the specific claims, and the Defendant's motion for summary judgment should be granted.

Qualified immunity exempts an officer from section 1983 liability under certain circumstances.[16] To receive qualified immunity, the officer "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."[17] Here, the Defendant was acting in his discretionary authority when he was patrolling the public roads as a Georgia State Trooper, including when he

---

[14]   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

[15]   Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

[16]   See Pearson v. Callahan, 555 U.S. 223, 231 (2009).

[17]   Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004) (internal quotation marks omitted).

made arrests while on patrol.[18] Because the Defendant was acting within his discretionary authority, the Plaintiff has the burden of showing that qualified immunity is not appropriate.[19] She must show that the constitutional rights the Defendant allegedly violated were "clearly established."[20] For this, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[21] In the context of a false arrest, the Court must inquire whether reasonable officers in the same circumstances would have believed they had probable cause to arrest.[22]

Here, even accepting all of the Plaintiff's facts as true, there is no indication that the Defendant violated any of the Plaintiff's clearly established constitutional rights when he arrested her. First, the Defendant had arguable probable cause to arrest the Plaintiff based on her speeding violation. In the Eleventh Circuit, probable cause to stop an offender for a traffic violation translates into probable cause to arrest the

---

[18] See O.C.G.A. §§ 35-2-32, 35-2-33; Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004).

[19] Id. (internal quotation marks omitted).

[20] See Pearson, 555 U.S. at 232.

[21] Anderson v. Creighton, 483 U.S. 635, 640 (1987).

[22] Kingsland, 382 F.3d at 1233.

offender for that violation.[23] Thus, the Defendant did not violate the Plaintiff's clearly established constitutional rights when he arrested the Plaintiff for speeding.

Further, the Defendant also had arguable probable cause to arrest the Plaintiff for obstruction of justice. Georgia law prohibits knowingly obstructing or hindering any law enforcement officer in the lawful discharge of his official duties.[24] The Plaintiff refused to sign her citation for speeding without a red pen. She attempted to use her cell phone to call her husband and ask what she should do in the absence of a red pen. The Defendant instructed the Plaintiff to end the call, and the Plaintiff refused to do so, and continued to use her cell phone despite the Defendant's request. Then the Plaintiff mentioned a weapon and, when the Defendant asked the Plaintiff to step out of the car, the Plaintiff refused and reached for her purse. The Court concludes that a reasonable officer could have concluded that the Plaintiff was obstructing justice when she refused to sign the citation because she did not have a red pen and when she failed to get out of her car as directed during the traffic stop. Thus, the Defendant is entitled to qualified immunity on the Plaintiff's false arrest claim because a reasonable officer would have concluded he had probable cause to arrest the Plaintiff for either the speeding violation or for obstruction of justice.

---

[23] Draper v. Reynolds, 369 F.3d 1270, 1276 (11th Cir. 2004).

[24] See O.C.G.A. § 16-10-24(a).

The Defendant is also entitled to qualified immunity on the Plaintiff's claim of excessive force. In general, the "Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest."[25] In assessing whether an application of force was excessive, the court considers "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted."[26]

Here, the Plaintiff cannot show that every reasonable officer in the Defendant's position would have considered his use of force unlawful.[27] The Defendant's evidence shows that the Plaintiff was behaving erratically by demanding a red pen to sign the ticket, being argumentative by refusing to sign and attempting to make a phone call, and by referencing a weapon and attempting to access her purse. A reasonable officer could have concluded that the Defendant's application of force was necessary to secure the Plaintiff and ensure the Defendant's safety. Further, prior Eleventh Circuit cases have accepted uses of force more severe than the force here, such as slamming

---

[25] Draper, 369 F.3d at 1277.

[26] Id. at 1277-78.

[27] See Hadley v. Gutierrez, 526 F.3d 1324, 1333-34 (11th Cir. 2008).

a suspect against a wall or a van or putting a suspect in a choke hold.[28] Given these cases, the Defendant could not have known that his use of force against the Plaintiff violated her constitutional rights. Because a reasonable police officer could conclude that the Defendant's use of force in arresting the Plaintiff was not excessive, the Defendant is entitled to qualified immunity.

The Defendant is thus entitled to qualified immunity from both the Plaintiff's false arrest claim and her excessive force claim. The Defendant's motion for summary judgment should be granted, and the Plaintiff's motion should be denied.

## IV. Conclusion

For the reasons set forth above, the Defendant's Motion for Summary Judgment [Doc. 74] is GRANTED and the Plaintiff's Motion for Summary Judgment [Doc. 68] is DENIED.

SO ORDERED, this 12 day of August, 2014.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[28] See Nolin v. Isbell, 207 F.3d 1253 (11th Cir. 2000) (slamming against van); Jones v. City of Dothan, 121 F.3d 1456, 1460 (11th Cir. 1997) (slamming against wall); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1556-60 (11th Cir. 1993) (choke hold).